D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LORENA ALESSINA, HENRY ARGUDO,
JULIETA CAPPONI and JOHNNY WILLIAN
TORRES RIVERA,

                    Plaintiffs,                **COMPLAINT**

         v.

                                **DEMAND FOR JURY TRIAL**

EL GAUCHITO II, INC. d/b/a EL GAUCHITO I,
EL GAUCHITO V, INC. d/b/a EL GAUCHITO II,
MARIO CIVELLI, MARCELLO CIVELLI, and
VANESSA CIVELLI,

                    Defendants.
------------------------------------------------------------x

        Plaintiffs allege as follows:

## JURISDICTION AND VENUE

      1.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331

because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they

are so related to the claims in this action within the Court's original jurisdiction that they form part

of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.      All Defendants are hereinafter collectively referred to as "Defendants."

4.      Defendant El Gauchito II, Inc. is a New York corporation that owns/operates El Gauchito I a restaurant located at 94-60 Corona Avenue in Queens, NY.

5.      Defendant El Gauchito V, Inc. is a New York corporation that owns/operates El Gauchito II a restaurant located at 158-15 Horace Harding Expwy in Queens, NY.

6.      Defendants El Gauchito II and El Gauchito V are collectively referred to herein as the "El Gauchito."

7.      The El Gauchito Restaurants are part of a single integrated enterprise that jointly employed Plaintiffs and those similarly situated at all relevant times.

8.      Each of the Restaurants operates under the same trade name, El Gauchito.

9.      The El Gauchito restaurants share the same website: www.elgauchitonyc.com.

10.     The El Gauchito restaurants share common ownership and management, including the Individual Defendants named herein, Mario Civelli and his children, Marcello Civelli and Vanessa Civelli.

11.     El Gauchito has annual gross sales in excess of $500,000.

12.     The El Gauchito restaurants share the same general management and have centralized payroll practices.

13.     Defendant Mario Civelli is the managing owner of the El Gauchito restaurants.  As such he has ultimate authority over employees' rates of pay, schedules, hiring and firing, and maintenance of employment records.

14.     Defendant Mario Civelli's children, Marcello Civelli and Vanessa Civelli, manage the day-today operations of the restaurants and have authority over employees' rates of pay, schedules, hiring and firing, and maintenance of employment records.

15.     Plaintiff Lorena Alessina worked at El Gauchito as a server for approximately four years, from 2016 until August 2020.

16.     Plaintiff Henry Argudo worked at El Gauchito as a server for approximately four years, from 2016 until March 2020.

17.     Plaintiff Julieta Capponi has worked at El Gauchito as a server for approximately two years, from 2018 until the present.

18.     Plaintiff Johnny Rivera worked at El Gauchito as a server for approximately five years, from 2015 until July 2020.

## **FACTS**

### **Wage and hour Allegations**

19.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

20.     Plaintiffs often worked overtime.

21.     For example, Plaintiffs were often scheduled to and in fact did work two double shifts (lunch and dinner in the same workday) and three dinner shifts in a week.

22.     A double shift typically entailed more than 12 hours of work, as it began at 10:45 am and ended close to midnight or 1 a.m. with no break in between.

3

23.     Lunch shifts typically started at 10:45 or 11:45 a.m. and lasted until 6 p.m. or later.

24.     Dinner shifts typically started about 5:45 p.m. and lasted until about 11 to 11:30 p.m. on Sundays, Mondays and Tuesdays, and until 12:30 a.m. to 1 a.m. on Fridays and Saturdays.

25.     Thus, in weeks when Plaintiffs worked two double shifts and three lunch or dinner shifts, they worked more than 40 hours.

26.     Defendants never paid Plaintiffs overtime and always paid them "shift pay," *i.e.*, a predetermined flat amount, for each shift Plaintiffs worked.

27.     The shift pay generally consisted of six hours for lunch shifts and five hours for dinner shifts which were paid at the applicable New York State tip credit minimum wages.

28.     If individuals were scheduled to open the restaurant prior to a lunch shift or to close the restaurant at the end of a dinner shifts, Defendants would occasionally add an additional hour to the "shift pay."

29.     Prior to 2019, El Gauchito did not have any mechanism for Plaintiffs to clock-in and clock-out before and after their shifts.  In other words, during this time, Defendants did not keep track of any of the time Plaintiffs worked.

30.     At some point in 2019, Defendants began requiring employees to clock-in and out prior to and at the conclusion of their shifts.  However, Defendants still did not pay Plaintiffs for the time that they clocked in and instead continued to pay shift pay.

31.     For the hours that Defendants paid Plaintiffs, they applied the New York food service workers minimum wage rates.  This amount was at all times less than the relevant full New York minimum wage rates.

32.     Defendants were not entitled to use federal or state tip credits to pay Plaintiffs less than the minimum wage, because (a) they did not give Plaintiffs proper notices of the tip credit,

and (b) they at times required Plaintiffs to spend more than 20% of their shifts performing non-tipped work.

33.     Defendants did not give Plaintiffs proper notices of the tip credit, as required by the New York State Hospitality wage Order.

34.     Moreover, Defendants required servers to spend two or more of each shift on side work that was not related to tipped customer service.  For example, Plaintiffs were required to clean the restaurant, answer customer phone calls, and prepare orders for delivery.

35.     As Plaintiffs' shifts rarely, if ever, last more than ten hours, they invariably spent more than 20% of their shifts on non-tip related work.

36.     El Gauchito was often overstaffed.  This would frequently lead management to send Plaintiffs home early.  On these occasions, Defendants would still require Plaintiffs to come to work and would send them home early without any pay at all, including without the mandated New York State "call-in" pay.  This would occur every week or every other week.

37.     In addition, Defendants did not pay Plaintiffs the "spread of hours" compensation when Plaintiffs' workdays spanned 10 or more hours.

38.     Defendants knew that nonpayment of minimum wage/overtime would economically injure Plaintiffs and violated federal and state laws.

39.     Defendants failed to provide Plaintiffs with wage rate notices as required by NYLL § 195(1).

40.     Plaintiffs' weekly pay statements also failed to comply with NYLL § 195(3) because they (a) did not contain accurate statements of the hours Plaintiffs worked, and (b) for certain time periods during Plaintiffs' employment, did not list allowances, such as the tip credit, that Defendants were taking from Plaintiffs' wages.

**Plaintiff Alessina's Allegations of Sexual Harassment/**
**Hostile Work Environment/Retaliation**

41.     Plaintiff Alessina commenced working at El Gauchito in 2016.

42.     Almost immediately after she started working at the restaurant, Defendant Marcello Civelli ("Marcello") created a sexually charged workplace and began sexually harassing Plaintiff Alessina.

43.     For example, Marcello constantly asked Ms. Alessina if she had a boyfriend.

44.     Marcello also often asked Ms. Alessina to go out to dinner with him.

45.     Marcello continued to ask Ms. Alessina these types of questions even though she made it clear to him that she did not want to go out with him and that his advances made her uncomfortable.

46.     Employees at El Gauchito work in close quarters.  On many occasions, that Marcello was near Ms. Alessina he would intentionally allow his hand or body to graze Ms. Alessina's back and backside.  None of Ms. Alessina's male coworkers experienced similar touching by Marcello even though they worked in similarly confined spaces.

47.     On or about August 22, 2020, Ms. Alessina was serving a table outside the restaurant.  The table was right next to where Marcello was sitting.  At one point, when Ms. Alessina had her back to Marcello he intentionally and brazenly put his hand on her buttocks.

48.     Ms. Alessina immediately exclaimed, "you touched my butt," and ran into the restaurant.

49.     The next day, Ms. Alessina complained about this incident to one of her managers, Vanessa Civelli.

50.     Two weeks after complaining about this incident, and despite almost four years of working at El Gauchito without incident, Marcello retaliated against Ms. Alessina by terminating her employment.

51.     Ms. Alessina is now unemployed in the midst of an international pandemic despite four years as a successful employee.

**Discrimination/Hostile Work Environment/Retaliation Allegations**

52.     Throughout their employment at El Gauchito, Plaintiffs Argudo and Rivera were consistently harassed about their national origin by Defendants Mario Civelli ("Mario") and Marcello Civelli.

53.     Defendants are of Argentinian origin.

54.     Plaintiff Rivera is of El Salvadorian descent.

55.     Plaintiff Argudo is of Ecuadorian descent.

56.     Defendant Mario Civelli commonly and viciously referred to Plaintiff Rivera, who has dark skin, as "negro de mierda."

57.     This term translates into English as "nigger shit."

58.     Mario would also commonly refer to Plaintiff Rivera as negro de mierda to Mr. Rivera's other coworkers.

59.     Mario would also frequently tell Mr. Rivera that he does not look Hispanic despite his Hispanic origins.

60.     Mario would tell him that he looks like an "Indian."

61.     This was meant in a pejorative and racist way and was intended to put Mr. Rivera down.

62.     Mario and Marcello consistently called Plaintiff Argudo "lazy" and told him that Ecuadorian people are all "lazy."

63.     Mario and Marcello also told Plaintiff Argudo that Ecuadorian people are like black people.

64.     Mario and Marcello would tell Mr. Argudo that he looks like an "Indian."

65.     These statements were said to Mr. Argudo in a racist and pejorative way.

66.     Mario and Marcello also told Mr. Argudo that he and all Ecuadorians should go back to their country.

67.     Mario and Marcello also frequently told Mr. Argudo that the only reason he was not seeking other employment was because he was "a dumb Ecuadorian" and thus he "would not be able find any other job."

**<u>Tolling Agreement</u>**

68.     In September 2020, Plaintiffs informed Defendants that they intend to file the causes of action set forth below based on the allegations set forth herein.

69.     Prior to Plaintiffs filing a formal complaint, the Parties agreed to attempt to resolve Plaintiffs' claims and they executed a tolling agreement which tolled all the claims set forth herein from September 30, 2020.

70.     On April 30, 2021, Plaintiffs informed Defendants that they were terminating the Parties' tolling agreement.

71.     Thus, in addition to the applicable statutes of limitations for each of the claims set forth below, Plaintiffs claims are tolled for an additional 212 days (*i.e.*, the time that the tolling agreement was in effect.)

## FIRST CLAIM FOR RELIEF
**(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)**
**(Brought By All Plaintiffs)**

72.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

73.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.   At all relevant times, Defendants have employed, "employee[s]," including Plaintiffs.

74.     Defendants knowingly failed to pay Plaintiffs the full federal minimum wage for each hour worked.

75.     Plaintiffs seek damages in the amount of their unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*)**
**(Brought By All Plaintiffs)**

76.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

77.     Throughout the statute of limitations period covered by these claims, Plaintiffs regularly worked in excess of forty (40) hours per workweek.

78.     At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiffs at one and one half times the greater of their regular rate or the full federal minimum wage for work in excess of forty (40) hours per workweek

and willfully failing to keep records required by the FLSA and relevant regulations even though the Plaintiffs were entitled to overtime.

79.    Plaintiffs seek damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*)**
**(Brought By All Plaintiffs)**

80.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

81.    Defendants knowingly failed to pay Plaintiffs the full New York State minimum wage for all hours worked.

82.    Defendants' failure to pay Plaintiffs the New York minimum wage was willful.

83.    As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**(New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.*
N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4)**
**(Brought By All Plaintiffs)**

84.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

85.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

86.     Defendants willfully, regularly and repeatedly failed to pay Plaintiffs at the required overtime rate of one-and-one-half times the full New York minimum wage for hours worked in excess of forty (40) hours per workweek.

87.     As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**New York Spread of Hours Violations**
**(New York Minimum Wage Act, N.Y. Stat. § 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6 (2016))**
**(Brought by All Plaintiffs)**

88.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

89.     Throughout the relevant period, Plaintiffs regularly worked double shifts that spanned over ten hours in a day.

90.     Defendants did not keep records of all of Plaintiffs' hours and did not pay them the required "spread of hours" compensation when required by New York Labor Law.

91.     As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**New York Call-In Pay Violations**
**(New York Minimum Wage Act, N.Y. Stat. § 650 et seq.,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.5 (2016))**
**(Brought by All Plaintiffs)**

92.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

93.     Throughout the relevant period, Plaintiffs were regularly sent home early from shifts that they were scheduled to work shifts at El Gauchito.

94.     On the occasions that Defendants sent Plaintiffs home early, Plaintiffs were not paid any wages at all.

95.     Defendants did not keep records of all of Plaintiffs' hours and did not pay them the required "call-in pay" compensation when required by New York Labor Law.

96.     As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, including liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)
### (Brought By All Plaintiffs)

97.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

98.     Defendants did not provide Plaintiffs with the notices/wage statements required by N.Y. Lab. Law §§ 195(1) and 195(3).

99.     As a result of Defendants' willful and unlawful conduct, Plaintiffs are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### (Section 1981 – Race Discrimination / Hostile Work Environment)
### (Brought on behalf of Plaintiffs Argudo and Rivera)

100.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

101.     In violation of Section 1981, Defendants intentionally and willfully discriminated against Plaintiffs Argudo and Rivera on the basis of their race.

102.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and continue to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

103.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered, and continue to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiffs' good name and reputation, lasting embarrassment, and humiliation.

104.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### NINTH CLAIM FOR RELIEF
**(New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. – Discrimination)**
**(Brought on behalf of Plaintiffs Argudo, Rivera and Alessina)**

105.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

106.     In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiff Alessina on the basis of her gender.

107.     In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiffs Argudo and Rivera on the basis of their national origin.

108.     Defendants' discrimination was sufficiently severe so as to affect the terms of Plaintiffs' employment.

109.     Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiffs' statutorily-protected civil rights.

110.        As a direct and proximate consequence of Defendants' discrimination against Plaintiffs, they have suffered, and continue to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

111.        As a result of Defendants' unlawful conduct, Plaintiffs are entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**TENTH CLAIM FOR RELIEF**
**(New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. – Hostile Work Environment)**
**(Brought on behalf of Plaintiffs Argudo, Rivera and Alessina)**

112.        Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

113.        In violation of the NYSHRL, Defendants intentionally fostered a hostile work environment for Plaintiff Alessina on the basis of her gender.

114.        In violation of the NYSHRL, Defendants intentionally fostered a hostile work environment for Plaintiffs Argudo and Rivera on the basis of their national origin.

115.        The work environment at Defendants' food establishment was sufficiently severe so as to affect the terms of Plaintiffs' employment.

116.        Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiffs' statutorily-protected civil rights.

117.        As a direct and proximate consequence of Defendants' actions against Plaintiffs, they have suffered, and continue to suffer, substantial monetary and non-monetary

damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

118.     As a result of Defendants' unlawful conduct, Plaintiffs are entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**ELEVENTH CLAIM FOR RELIEF**
**(New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. – Retaliation)**
**(Brought on behalf of Plaintiff Alessina)**

119.     Plaintiff Alessina realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

120.     In violation of the NYSHRL, Defendant retaliated against Plaintiff Alessina for her complaints of gender discrimination and sexual harassment.

121.     Defendants' retaliation was sufficiently severe so as to affect the terms of Plaintiff's employment.

122.     Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

123.     As a direct and proximate consequence of Defendants' retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

124.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress,

punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## TWELTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL") – Discrimination)
### (Brought on behalf of Plaintiffs Argudo, Rivera and Alessina)

125.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

126.    In violation of the NYCHRL, Defendants discriminated against Plaintiff Alessina on the basis of her gender.

127.    In violation of the NYCHRL, Defendants discriminated against Plaintiffs Argudo and Rivera on the basis of their national origin.

128.    As a direct and proximate consequence of Defendants' discrimination against Plaintiffs, Plaintiffs suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

129.    As a direct and proximate consequence of Defendants' discrimination against Plaintiffs, Plaintiffs suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiffs' good name and reputations, lasting embarrassment, humiliation and anguish.

130.    As a result of Defendants' unlawful conduct, Plaintiffs are entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRTEENTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL") – Hostile Work Environment)
### (Brought on behalf of Plaintiffs Argudo, Rivera and Alessina)

131.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

132.     In violation of the NYCHRL, Defendants intentionally fostered a hostile work environment for Plaintiff Alessina on the basis of her gender.

133.     In violation of the NYCHRL, Defendants intentionally fostered a hostile work environment for Plaintiffs Argudo and Rivera on the basis of their national origin.

134.     As a direct and proximate consequence of Defendants' actions against Plaintiffs, Plaintiffs suffered, and continue to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

135.     As a direct and proximate consequence of Defendants' actions against Plaintiffs, Plaintiffs suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiffs' good name and reputations, lasting embarrassment, humiliation and anguish.

136.     As a result of Defendants' unlawful conduct, Plaintiffs are entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## FOURTEENTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL") – Retaliation)
### (Brought on behalf of Plaintiff Alessina)

137.      Plaintiff Alessina realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

138.      In violation of NYCHRL, Defendant retaliated against Plaintiff Alessina for complaining about gender discrimination and discrimination based on her status as a victim of sexual offenses or stalking.

139.      As a direct and proximate consequence of Defendants' retaliation against Plaintiff Alessina, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

140.      As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, as well as front pay, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

B.      Penalties available under applicable laws;

C.      Costs of action incurred herein, including expert fees;

D.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. § 663 and other applicable statutes;

E.      Pre-judgment and post-judgment interest, as provided by law; and

F.      Such other and further legal and equitable relief as this Court deems necessary, just

and proper.


Dated:  New York, New York          Respectfully submitted,
        August 11, 2021

                                    JOSEPH & KIRSCHENBAUM LLP


                                    By:   _s/D. Maimon Kirschenbaum_____
                                          D. Maimon Kirschenbaum
                                          Josef Nussbaum
                                          32 Broadway, Suite 601
                                          New York, NY 10004
                                          Tel: (212) 688-5640
                                          Fax: (212) 688-2548

                                    *Attorneys for Plaintiffs*


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.